# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

BOUNCE EXCHANGE, INC.,

               Plaintiff,

     v.

ZEUS ENTERPRISE LTD., d/b/a YIELDIFY,

               Defendant.

Civ. No. 1:15-cv-03268-DLC-GWG

**SECOND AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

## SECOND AMENDED COMPLAINT

       Plaintiff Bounce Exchange, Inc. ("Bounce Exchange"), by and through its attorneys, Fish & Richardson P.C., brings this complaint against Zeus Enterprise Ltd., doing business as Yieldify ("Defendant" or "Yieldify").  In support thereof, Bounce Exchange alleges the following.

## NATURE OF ACTION

       1.      This is a case involving copyright infringement in and outside of the United States, and multiple and repeated violations of the Digital Millennium Copyright Act.

       2.      In particular, Bounce Exchange is a New York City-based software company that pioneered a proprietary software program used by retail website owners and online publishers to retain visitors and increase Internet sales and revenues.  Bounce Exchange's software is generally referred to in the industry as *behavioral marketing automation* software. When an end-user visits the website of a Bounce Exchange customer, Bounce Exchange's software is downloaded by the end-user's web browser and a copy is temporarily stored on the end-user's computer.  The downloaded software includes, among other things, Bounce Exchange-authored computer programming code that monitors the end-user's behavior and predicts when and how the user will leave – or "bounce" off – the website.  The end user's

behavior "triggers" Bounce Exchange's software to run one or more "campaigns"—such as a message or other advertisement displayed to the end-user—which encourage the user to engage with or remain on the site. Bounce Exchange's software defines and reacts to numerous triggers.  Bounce Exchange refers to these triggers as the "keys to the house," given the time taken to research them and their importance to the effectiveness of Bounce Exchange's service and overall business model.  Bounce Exchange's behavioral marketing automation software program is hereinafter referred to as the "Bounce Exchange Software."

3.    Yieldify is a software company whose executives, under false pretenses, arranged for and received a demonstration of Bounce Exchange's service and received non-public information regarding the Bounce Exchange Software, along with certain Bounce Exchange marketing material.  Yieldify copied Bounce Exchange's business model, aspects of its marketing material, and the Bounce Exchange Software, and proceeded to run its business in direct competition with Bounce Exchange.  Upon information and belief, Yieldify's infringing derivative versions of the Bounce Exchange Software have been and are stored on servers in Ireland, the UK, and/or the U.S. and distributed to millions of website visitors all over the world, including those located in at least the US, the UK, Ireland, Germany and Australia.

**PARTIES**

4.    Bounce Exchange is a Delaware corporation with its principal place of business at 620 8th Avenue, Floor 21, New York, New York 10018.

5.    On information and belief, Defendant is a United Kingdom corporation with its principal place of business in London, England. Defendant operates in the United States out of its office located at 1412 Broadway, 22nd Floor, New York, New York, 10018. Defendant also has offices in the UK, Germany, and Australia. Defendant operates its business under the name "Yieldify."

**JURISDICTION AND VENUE**

6.      Bounce Exchange hereby restates and realleges the allegations set forth in paragraphs 1 through 5 above and incorporates them by reference.

7.      This is an action for copyright infringement arising under 17 U.S.C. § 101 *et seq*, and for violations of the Digital Millennium Copyright Act under 17 U.S.C. § 1202.

8.      This also is an action for copyright infringement arising under the copyright laws of the UK, Ireland, Germany, and Australia, namely, the UK's Copyright, Designs and Patents Act 1988 (as amended), Ireland's Copyright and Related Rights Act 2000; Germany's Act on Copyrights and Related Rights (Sept. 9, 1965 as amended on Aug. 31, 2015) and Civil Code (Jan. 2, 2002, and as amended on June 29, 2015); and Australia's Copyright Act 1968 (Cth).  The Court has jurisdiction over the federal copyright infringement claim and the Digital Millennium Copyright Act claim pursuant to 28 U.S.C. § 1338(a).

9.      The Court has supplemental jurisdiction over the foreign copyright law claims set forth in Paragraph 8 pursuant to 28 U.S.C. § 1367(a) as all claims herein form part of the same case or controversy. The infringement of Bounce Exchange's rights alleged under all claims herein is part of the same practice and scheme. Convenience, fairness, and the full and efficient resolution of this dispute favors the exercise of supplemental jurisdiction.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because (1) a substantial part of the events giving rise to Bounce Exchange's claims arose in this District and (2) Defendant operates a place of business in this District and Bounce Exchange maintains its principal place of business in this District.

11.      The Court has personal jurisdiction over Defendant. Defendant has conducted and does conduct business within the State of New York and maintains its only office in the United States within this District.

<u>FACTS</u>

**<u>Bounce Exchange – A Market Leader In Behavioral Marketing Automation Software</u>**

12.    Bounce Exchange was co-founded in 2010 by young entrepreneurs Cole Sharp and Ryan Urban, and began operations in a business incubator at New York University Polytechnic.  What began in 2010 as a company of just a few employees has grown, through the research, development, dedication and hard work of the Bounce Exchange team, to a company in 2015 of over 120 employees and over 350 customers.

13.    Today, Bounce Exchange is a market leader in behavioral marketing automation software. It offers behavioral marketing automation software to clients that sell products or services through online websites. One of Bounce Exchange's most important technologies is the Bounce Exchange Software that automatically tracks and responds dynamically to visitor behavior on a client's website to target the visitor with customized content and advertisements. When a visitor views the client website via a web browser, the Bounce Exchange Software is downloaded into the visitor's web browser and executes from the web browser to perform its functionality.

14.    Bounce Exchange provides, and at all relevant times has provided, the Bounce Exchange Software pursuant to license agreements by which Bounce Exchange retains all exclusive rights to reproduce, distribute, and prepare derivative works of the Bounce Exchange Software.

15.    Bounce Exchange completed development of the Bounce Exchange Software and first made it available for use by clients under license in or around November 2011.

16.    Bounce Exchange is the author and exclusive owner of all rights, title and interest in and to the copyrights to the Bounce Exchange Software.

17.    Bounce Exchange owns U.S. copyright registrations for the Bounce Exchange Software at issue, including a registration for the first version of Bounce Exchange Software (titled "Bounce Exchange Client Application v.1.0.0") and registrations for two derivative

works adapted therefrom (titled "Bounce Exchange Client Application v.2.0.0," and "Bounce Exchange Client Application v.3.0.0," respectively) (US. Reg. Nos. Txu001930578, Txu001930579, Txu001931107). Copies of the Copyright Office's online records reflecting these registrations are attached hereto as Exhibit A.

**Yieldify Steals The Bounce Exchange Software, Creates An Infringing Derivative, Removes And Alters Bounce Exchange's Copyright Management Information, And Distributes Infringing Code With False Copyright Management Information**

18.     Yieldify is a UK corporation that began business operations in 2013.

19.     In March 2013, what are now known to be Yieldify executives contacted Bounce Exchange under the guise of being potential customers.

20.     On information and belief, Defendant obtained access to the Bounce Exchange Software at least as early as March 2013. Mr. Jay Radia, Defendant's Chief Executive Officer, contacted Bounce Exchange in March 2013, presenting himself as a potential customer and requesting a demonstration of the Bounce Exchange Software. In that same month, Mr. Meelan Radia, Defendant's Chief Technical Officer, also contacted Bounce Exchange, presenting himself as a reseller acting on behalf of potential customers and requesting a demonstration of the Bounce Exchange Software. Bounce Exchange provided a demonstration of the Bounce Exchange Software to Mr. Meelan Radia and provided information about the Bounce Exchange Software to Mr. Jay Radia, and also provided these gentlemen non-public information about Bounce Exchange's "exit-intent" technology as well as certain marketing material, but at no time authorized Messrs. Radia, Defendant, or any agents thereof to reproduce, distribute, or prepare derivative works of the Bounce Exchange Software or portions or derivative works thereof.

21.     Two years later, in February 2015, Bounce Exchange discovered that Defendant offered software source code substantially similar to the Bounce Exchange Software ("Defendant's Software" or "Defendant's infringing code") for use by e-commerce

clients, in direct competition with Bounce Exchange. After investigating the matter further,

Bounce Exchange confirmed that Defendant had copied and reproduced portions of the code,

structure, sequence, and organization of the Bounce Exchange Software in Defendant's

Software.

22.    As one example, the Bounce Exchange Software includes code created and

authored solely by Bounce Exchange that acts as a timer.  The program clocks the amount of

time the visitor is on a website, and then, after a set amount of time, the program releases a

"content campaign," such as an advertisement or a discount coupon, to encourage the user to

engage with or stay on the site and make a purchase.  Reproduced below is a sequence of

three web screens that reflect this particular aspect of the Bounce Exchange Software.



23.    Yieldify copied the code for this function literally in certain places, and non-

literally in others, and also copied  the structure, sequence and arrangement of the Bounce

Exchange Software, as shown here:

| Bounce Exchange Code | Infringing Yieldify Code |
|---|---|
| <pre>ca['timer'] = function(p,v,ca_id) {<br>    setTimeout(function() {<br>        show_ad('timer',ca_id);<br>    }, parseInt(v) * 1000);<br>}</pre> | <pre>a.timer = function(a,b,g) {<br>    setTimeout(function() {<br>        I("timer",g)<br>    }, 1E3 * parseInt(b,10))<br>}</pre> |

24.     As a second example, the Bounce Exchange Software includes code created and authored solely by Bounce Exchange for defining an "inactivity" function that determines when a visitor stops actively browsing a client's website (e.g., by a lack of mouse movement, mouse scroll, key strokes, etc.).  When that occurs, the program releases a "content campaign," such as an advertisement or a discount coupon, to encourage the user to reengage with or stay on the site and make a purchase.  Reproduced below is a sequence of three web screens that reflect this particular aspect of the Bounce Exchange Software.



| Before | Action | After |
|---|---|---|
| User activity stops (e.g. mouse stops moving), | after a set amount of time, | new content is displayed. |

25.     Yieldify copied the code for this function literally in certain places, and non-literally in others, and also copied  the structure, sequence and arrangement of the Bounce Exchange Software, as shown here:

| Bounce Exchange Code | Infringing Yieldify Code |
|---|---|
| <pre>a['inactivity'] = function (p,v,ca_id){

    bouncex.events = 'mousemove.bouncex
    keydown.bouncex DOMMouseScroll.bouncex
    mousewheel.bouncex mousedown.bouncex
    touchstart.bouncex touchmove.bouncex';

    bouncex.body.bind(bouncex.events,function() {

        clearTimeout(bouncex.inactivity_timeout);

            bouncex.inactivity_timeout =
            setIactivityTimeout(ca_id,v);

    });

        bouncex.inactivity_timeout =
        setInactivityTimeout(ca_id,v);

}</pre> | <pre>a.inactivity = function(a,b,g){

    yiel.events = "mousemove.yieldifyx
    keydown.yieldifyx DOMMouseScroll.yieldifyx
    mousewheel.yieldifyx mousedown.yieldifyx
    touchstart.yieldifyx touchmove.yieldifyx";

    yiel.body.bind(yiel.events,function() {

        -1 == n.inArray(g,
        yiel.inactivity_timeout_out) &&
        (clearTimeout(yiel.inactivity_timeout[g]),
        yiel.inactivity_timeout[g] = cc(g,b))

    };

    yiel.inactivity_timeout[g] = cc(g,b)

}</pre> |

26.    Defendant copied hundreds of lines of code and generally replicated the overall structure, sequence, and organization of the Bounce Exchange Software. Further examples of Defendant's copying and infringement can be found in <u>Exhibit B</u>.  The examples above and in <u>Exhibit B</u> are not exhaustive.  In addition, the version of Defendant's code used for comparison purposes was obscured in various ways by an automated process called "minification," which makes the code both faster for a computer to process and much harder for a person to read and understand.  A result of minification is that the textual expression in the code, such as the words or phrases authored by the developer, can be reduced to a single, cryptic letter, or a letter accompanied by a number.  While BounceX has analyzed Defendant's minified code in sufficient detail to determine copyright infringement, a full assessment of the scope of the infringement can only be made by reviewing the unobscured, unminified code, which only Defendant has.

27.    The code that was copied by Defendant is critical to Bounce Exchange's Software and service and is similarly critical to Yieldify's software and service because it reads and interprets an end user's behavior, and triggers what and when "campaigns" will be displayed on a webpage to entice the end-user to stay.  In other words, Defendant copied and stole Bounce Exchange's code so that its software could react to the same triggers and run the same campaigns.  Without these "keys to the house" Defendant could not offer competitive services or realistically compete with Bounce Exchange in the market.

28.    With its infringing code, Defendant is directly competing with Bounce Exchange causing lost sales and customers, damage to the marketplace (such as a reduction in perceived quality of behavioral marketing automation software generally), and increased price sensitivity among prospective and current customers.  In addition, Defendant successfully raised over $11.5 Million in venture financing based on its use of the Bounce Exchange Software and used such proceeds to, *inter alia*  expand operations into New York City and the

New York market and increase its attempt to directly compete with and prejudice Bounce Exchange.

29.     Defendant also removed and altered Bounce Exchange's copyright management information ("CMI") from the Bounce Exchange Software by replacing, for example, "Bounce" with "Yieldify," and "BounceX" with "YieldifyX" or "Yiel" throughout its infringing program.  A small sampling of examples is below:

| | |
|---|---|
| *bouncex.overlay_visible* → | *yiel.overlay_visible* |
| *mousemove.bouncex_show* → | *mousemove.yieldifyx_show* |
| *mouseleave.bouncex_show* → | *mouseleave.yieldifyx_show* |
| *bouncex.campaigns* → | *yiel.campaigns* |
| *setBounceCookie* → | *setYieldifyCookie* |
| *bouncexevents =*<br>*mousemove.bouncex* → | *yiel.events =*<br>*mousemove.yieldifyx* |
| *keydown.bouncex* → | *keydown.yieldifyx* |
| *DOMMouseScroll.bouncex* → | *DOMMouseScroll.yieldifyx* |
| *mousewheel.bouncex* → | *mousewheel.yieldifyx* |
| *mousedown.bouncex* → | *mousedown.yieldifyx* |
| *touchstart.bouncex* → | *touchstart.yieldifyx* |
| *touchmove.bouncex* → | *touchmove.yieldifyx* |

30.     In addition to evidencing Defendant's actual copying of the Bounce Exchange Software, Defendant's removal and modification of Bounce Exchange's name from the Bounce Exchange Software constitutes the removal and alteration of Copyright Management Information ("CMI") in violation of the Digital Millennium Copyright Act. 17 U.S.C. § 1202.

31.     Defendant then distributed its accused computer program featuring the altered CMI to end-users' computers all over the world, as end-users visited the websites owned and operated by Defendant's clients.

32.     On information and belief, Defendant's infringing code is stored on a content delivery network (a "CDN") that distributes the infringing code to the end-users of Defendant's clients' websites in response to a request made from the end-users' computers. Further, on information and belief, the distribution and download of altered CMI by such CDNs, other service providers, and end users, which Defendant at all times had and has the right and ability to control and supervise, numbers into the hundreds of thousands, at the very least, and likely in the millions.

33.     The distribution of Defendant's infringing code, which includes altered CMI, constitutes the provision and distribution of false CMI, and the distribution of CMI with knowledge that the CMI was removed or altered without authority of the copyright owner or the law.  Such provision and distribution is an intentional violation of the Digital Millennium Copyright Act. 17 U.S.C. § 1202.

34.     Defendant's removal and modification of CMI, and its knowing distribution of false CMI, also constitute violations of Section 296ZG of the Copyright, Designs and Patents Act 1988 (as amended) in the United Kingdom, which protects "electronic rights management information" that is defined in Section 375(2) as "any information provided by the copyright owner or the holder of any right under copyright which identifies the work, the author, the copyright owner or the holder of any intellectual property rights, or information about the terms and conditions of use of the work, and any numbers or codes that represent such information."

35.     Defendant's removal and modification of CMI, and its knowing distribution of false CMI, also constitute violations of Section 376 (1) of the Copyright and Related Rights

Act 2000 in Ireland, which protects "rights management information" that is defined as information, or any representation thereof that identifies a copyright work, or the author of a copyright work, or the owner of any right in a copyright work, where any of these items of information, or any representations thereof, are attached to or appear in connection with a copy of a copyright work.

36.     Defendant's removal and modification of CMI, and its knowing distribution of false CMI, also constitute violations of Article 95c of the German Copyright Act, which protects "rights-management" that is defined as electronic information that identifies the copyrighted work or other protected subject-matter, or the author or any other rightholder, including any numbers and codes that represent such information, or any representation thereof.

37.     Defendant's removal and modification of CMI, and its knowing distribution of false CMI, also constitute violations of Sections 116B – 116D of the Australian Copyright Act, which protect "electronic rights management information" that is defined as information embedded in the copyrighted work that identifies the copyright owner.

## Bounce Exchange Notifies Yieldify Of The Infringement

38.     On March 11, 2015, Bounce Exchange sent Defendant a letter alleging copyright infringement and demanding that Defendant cease its unlawful reproduction, adaptation, and distribution of the Bounce Exchange Software and derivative works thereof.

39.     On March 23, 2015, Defendant responded with a letter comprised of merely four sentences, expressing its disagreement with Bounce Exchange's infringement claims and representing that it had replaced the software Bounce Exchange cited in its March 11, 2015 correspondence with "code that is based on an open-source solution."

40.     Upon information and belief, the revised and subsequent versions of Defendant's Software post March 2015 also infringe the Bounce Exchange Software because

they continue to embody literal and non-literal copying and are substantially similar to, and unauthorized derivative works of, the Bounce Exchange Software.

41.    Upon information and belief, Defendant's infringing code has been distributed to millions of website visitors in many countries around the world including, at a minimum, in the US, the UK, Ireland, Germany, and Australia. Such distribution occurs directly from Defendant, as well as indirectly from Defendant through CDNs and other service providers. Regardless, Defendant is a direct copyright infringer; Defendant knowingly induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing, and assisting others, such as CDNs, which it has the right and ability to control and supervise, to reproduce and distribute its infringing code.  Because the use and distribution of its infringing code is the basis on which Defendant operates its business, and finds and retains clients, Defendant at all times had and has an obvious and direct financial interest in the infringement of the Bounce Exchange Software.

42.    By reason of Defendant's copyright infringement, Bounce Exchange has sustained substantial injury, loss and damage to its copyrights in the Bounce Exchange Software, and to its business.

43.    By reason of Defendant's intentional, multiple, and repeated violations of the Digital Millennium Copyright Act, Bounce Exchange has sustained substantial injury, loss and damage to its business.

### FIRST CAUSE OF ACTION
### Copyright Infringement – 17 U.S.C. § 501

44.    Bounce Exchange hereby restates and realleges the allegations set forth in paragraphs 1 through 43 above and incorporates them herein by reference.

45.    The Bounce Exchange Software consists of original material that is copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 *et seq.*

46.     Bounce Exchange owns U.S. copyright registrations for the Bounce Exchange Software at issue. See Exhibit A.

47.     Bounce Exchange is the sole and exclusive owner of the Bounce Exchange Software and all copyrights associated therewith.

48.     Defendant's Software reproduces and modifies the original, copyright-protected elements of the Bounce Exchange Software to such an extent that Defendant's Software, and derivative versions thereof, is substantially similar to the Bounce Exchange Software or constitutes an infringing derivative work.

49.     The infringed elements of the Bounce Exchange Software include source code structure, sequence, organization, and source code content. In several instances, Defendant literally copied Bounce Exchange Software's source code. Exhibit B reflects sample portions of source code from Defendant's Software that are nearly identical to corresponding portions of source code in the Bounce Exchange Software on a line-for-line basis.

50.     Moreover, some of Defendant's Software adheres to a similar structure, sequence, and/or organization as the Bounce Exchange Software. For example, certain corresponding sets of source code shown in the Exhibit B, also referred to as "functions," are stored in an array object in both Bounce Exchange Software and the Defendant's Software. The content and structure, sequenhe ce, and organization of this source code represents the original, expressive authorship of Bounce Exchange, the copyright in which is owned exclusively by Bounce Exchange.

51.     Without consent, authorization, approval, or license, Defendant knowingly and willfully infringed Bounce Exchange's exclusive rights in the Bounce Exchange Software.

52.     Defendant has realized unjust profits, gains, and advantages from its infringements. Bounce Exchange is entitled to recover from Defendant such gains, profits, and advantages in an amount to be determined at trial.

53.     As a direct and proximate result of Defendant's copyright infringement, Bounce Exchange has suffered monetary loss and irreparable harm to its business, reputation, and goodwill. Bounce Exchange is entitled to injunctive relief as well as the recovery of damages, and Defendant's profits, from Defendant in amounts to be determined at trial.

## SECOND CAUSE OF ACTION
### Contributory Copyright Infringement

54.     Bounce Exchange hereby restates and realleges the allegations set forth in paragraphs 1 through 53 above and incorporates them herein by reference.

55.     Due to the nature of Yieldify's service, numerous Internet users, website owners, content delivery networks, and service providers directly infringe the Bounce Exchange Software by copying, displaying, reproducing, and distributing Defendant's infringing code.

56.     Defendant induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing, and assisting others to copy, reproduce, display, and distribute Yieldify's infringing code.

57.     Defendant at all times had and has knowledge of these acts and the infringement of the Bounce Exchange Software.

58.      The acts and conduct of Defendant, as alleged above, constitute contributory copyright infringement.

59.     As a direct and proximate result of Defendant's copyright infringement, Bounce Exchange has suffered monetary loss and irreparable harm to its business, reputation, and goodwill. Bounce Exchange is entitled to injunctive relief as well as the recovery of damages, and Defendant's profits, from Defendant in amounts to be determined at trial.

**THIRD CAUSE OF ACTION**
**Vicarious Copyright Infringement**

60.     Bounce Exchange hereby restates and realleges the allegations set forth in paragraphs 1 through 59 above and incorporates them herein by reference.

61.     Due to the nature of Yieldify's service, numerous Internet users, website owners, content delivery networks, and service providers directly infringe the Bounce Exchange Software by copying, displaying, reproducing, and distributing Defendant's infringing code.

62.     As the alleged "owner" of the infringing code  that licenses and/or otherwise authorizes the use of the infringing code to clients, CDNs, and end-users, Defendant at all times had and has the right and ability to control and supervise the infringing acts of such individuals and entities.

63.     Further, as the alleged "owner" of the infringing code that licenses and/or otherwise authorizes the use of the infringing code to clients, CDNs, and end-users, Defendant at all times had and has an obvious and direct financial interest in the infringement of the Bounce Exchange Software.

64.     The acts and conduct of Defendant, as alleged above, constitute vicarious copyright infringement.

65.     As a direct and proximate result of Defendant's copyright infringement, Bounce Exchange has suffered monetary loss and irreparable harm to its business, reputation, and goodwill. Bounce Exchange is entitled to injunctive relief as well as the recovery of damages, and Defendant's profits, from Defendant in amounts to be determined at trial.

**FOURTH CAUSE OF ACTION**
**Violations of the Digital Millennium Copyright Act,**
**17 U.S.C § 1202.**

66.     Bounce Exchange hereby restates and realleges the allegations set forth in paragraphs 1 through 65 above and incorporates them herein by reference.

67.     Bounce Exchange is the copyright owner of the Bounce Exchange Software.

68.     All references to and identifications of Bounce Exchange, including "Bounce" and "BounceX," in the Bounce Exchange Software, constitute CMI under the DMCA pursuant to 17 U.S.C. § 1202(c).

69.     Defendant's removal of all references to and identifications of Bounce Exchange, including "Bounce" and "BounceX," in the Bounce Exchange Software, constitutes the removal and alteration of CMI in violation of 17 U.S.C. § 1202(b).  Bounce Exchange did not authorize this removal or modification.

70.     Defendant's distribution of false CMI was made knowingly and with the intent to induce, enable, facilitate, or conceal its infringement, in violation of  17 U.S.C. § 1202(a).

71.     Defendant's distribution and/or importation for distribution of CMI, knowing that Bounce Exchange's CMI had been removed or altered without the authority of Bounce Exchange, is a violation of 17 U.S.C. § 1202(b).

72.     Pursuant to 17 U.S.C. § 1203(c), Bounce Exchange is entitled to recover from Defendant for violation of 17 U.S.C. § 1202 either the actual damages and any additional profits of Defendant attributable to Defendant's § 1202 violation, or statutory damages as provided for in 17 U.S.C. § 1203(c)(3)(B).

73.     Bounce Exchange is also entitled to permanent injunctive relief pursuant to 17 U.S.C. § 1203(b)(1) because Bounce Exchange has no adequate remedy at law for Defendant's wrongful conduct because, among other things, (a) Bounce Exchange's copyrights are unique and valuable property whose market value is impossible to assess, thus causing irreparable harm; (b) Defendant's violation of the DMCA's CMI provisions harms Bounce Exchange such that Bounce Exchange cannot be made whole by any monetary award; and (c) Defendant's wrongful conduct, and the resulting damage to Bounce Exchange, is continuing.

**FIFTH CAUSE OF ACTION**
**Vicarious Liability for Violations of The Digital Millennium Copyright Act,**
**17 U.S.C.A. § 1202**

74.     Bounce Exchange hereby restates and realleges the allegations set forth in paragraphs 1 through 73 above and incorporates them herein by reference.

75.     Due to the nature of Yieldify's service, numerous Internet users, website owners, content delivery networks, and service providers directly violate 17 U.S.C. § 1202 by distributing false CMI.

76.     As the alleged "owner" of the infringing code that licenses and/or otherwise authorizes the use and distribution of the infringing code to clients, CDNs, and end-users, Defendant at all times had and has the right and ability to control and supervise the DMCA violations by such individuals and entities.

77.     Further, as the alleged "owner" of the infringing code that licenses and/or otherwise authorizes the use and distribution of the infringing code to clients, CDNs, and end-users, Defendant at all times had and has an obvious and direct financial interest in such violations of the DMCA.

78.     Due to the acts and conduct of Defendant, as alleged above, Defendant is vicariously liable for violations of Section 1202 of the Digital Millennium Copyright Act.

**SIXTH CAUSE OF ACTION**
**Copyright Infringement Under the Laws of the United Kingdom –**
**The Copyright, Designs and Patents Act 1988.**

79.     Bounce Exchange hereby restates and realleges the allegations set forth in paragraphs 1 through 78 above and incorporates them herein by reference.

80.     Bounce Exchange realleges that it is the owner of all rights, title and interest in the copyrights to the Bounce Exchange Software.

81.     The Bounce Exchange Software consists of material wholly original to Bounce Exchange, and is copyrighted subject matter protected under the laws of the United

Kingdom as a literary work pursuant to §3 of the Copyright, Designs and Patents Act 1988 (as amended).

82.     Bounce Exchange is the exclusive copyright owner of the Bounce Exchange Software pursuant to §§ 53-54 of the Copyright, Designs and Patents Act 1988 (as amended).

83.     Pursuant to the Berne Convention for the Protection of Literary and Artistic Works, to which the United Kingdom is a signatory and member, UK law and its Copyright Act establish that all the dispositions of the law are equally applicable to creative works published in foreign countries, regardless of the author's nationality, so long as the author's nation of origin is a signatory to the Berne Convention.

84.     Bounce Exchange is a U.S. corporation, and the United States is a signatory to the Berne Convention.

85.     Under the principle of national treatment, therefore, the copyright protection granted to the Bounce Exchange Software is the same as that which UK law would grant to the creative works of a UK author.

86.     Pursuant to the Berne Convention, national treatment for foreign works is given without any formality. Article 5 paragraph 2 of the Convention states that the enjoyment and the exercise of these rights will not be subordinated to any formality and both are independent of the existence of protection in the country of origin of the work.

87.     As a consequence, the Bounce Exchange Software obtains national treatment without any formality such that the Bounce Exchange Software is afforded the full protection of UK law from the moment it was recorded in writing pursuant to §3 of the Copyright, Designs and Patents Act 1988 (as amended).

88.     Defendant has infringed and unless enjoined, will continue to infringe Bounce Exchange's UK copyrights in the Bounce Exchange Software, in violation of the Copyright, Designs and Patents Act 1988 (as amended), by copying it, issuing copies of it to the public,

renting or lending it to the public, displaying it in public, communicating it to the public, adapting it, and reproducing, displaying, loading, running, distributing and utilizing it, or a substantial part of it,  in the UK, and/or authorizing the aforementioned acts.

89.     In contravention of § 296ZG of the Copyright, Designs and Patents Act 1988 (as amended), the Defendant has also knowingly and without authority, removed or altered electronic rights management information from the Bounce Exchange Software and/or has knowingly and without authority, distributed, imported for distribution or communicated to the public copies of the Bounce Exchange Software from which electronic rights management information was removed or altered without authority, and the Defendant knows, or has reason to believe, that by so doing it is inducing, enabling, facilitating or concealing an infringement of copyright.

90.     Defendant has received substantial benefits in connection with these unauthorized and unlawful activities.

91.     All of the Defendant's acts are and were performed without the permission, license, or consent of Bounce Exchange.

92.     All of Defendant's acts of infringement knowing, willful, and in complete disregard to the rights of Bounce Exchange.

93.     Said wrongful acts of Defendant has caused, and continue to cause, great injury to Bounce Exchange, which damage cannot be accurately computed, and unless this Court restrains Defendant from further commission of said acts, Bounce Exchange will suffer irreparable injury, for which it is without an adequate remedy at law.

94.     As a result of the acts of Defendant alleged herein, Bounce Exchange has suffered and is suffering substantial damage including, but not limited to, , loss of profits, injury to goodwill and reputation, and the dilution of the value of its rights, all of which are not yet fully ascertainable.

95.     As a result of the acts of Defendant alleged herein, Bounce Exchange is entitled to its damages for infringement of copyright (including additional damages pursuant to §97(2) of the Copyright, Designs and Patents Act 1988), or, alternatively and at Bounce Exchange's option, Defendant's profits, together with an order for payment to Bounce Exchange of all sums found due.

96.     As a result of the acts of Defendant alleged herein, Bounce Exchange is entitled to an award of its attorneys' fees and costs pursuant to Article 14 of Directive 2004/48/EC of the European Parliament and of the Council of 29 April 2004 on the enforcement of intellectual property rights.

### SEVENTH CAUSE OF ACTION
### Copyright Infringement Under the Laws of Ireland –
### Copyright and Related Rights Act 2000 ("CRRA 2000")

97.     Bounce Exchange hereby restates and realleges the allegations set forth in paragraphs 1 through 96 above and incorporates them herein by reference.

98.     The Bounce Exchange Software consists of material wholly original to Bounce Exchange, and is copyrighted subject matter protected under the laws of Ireland under the CRRA 2000.

99.     Bounce Exchange is the exclusive copyright owner of the Bounce Exchange Software pursuant to § 17 of the CRRA 2000 and, in particular, pursuant to §17(2), which confirms that copyright subsists in, *inter alia*, a literary work that is original. Pursuant to § 2(1) of the CRRA 2000, a "literary work" is stated to mean *"a work, including a computer program."*

100.    Ireland is a signatory to and a member of the Berne Convention.

101.    Under the principle of national treatment, therefore, the copyright protection granted to the Bounce Exchange Software is the same as that which Irish law would grant to the creative, including literary, works of an Irish author.

102.     As a consequence, the Bounce Exchange Software obtains national treatment without any formality, such that the Bounce Exchange Software is afforded the full protection of Irish law from the moment it was created, without any need for registration in Ireland. *See* § 184 of and the Third Schedule to the CRRA 2000.

103.     Defendant has infringed and, unless enjoined, will continue to infringe Bounce Exchange's Irish copyrights in the Bounce Exchange Software, in violation of the CRRA 2000, §37 - 43, by (a) copying it, (b) making it available to the public (including issuing copies of it to the public, renting or lending it to the public, displaying it in public, communicating it to the public) and (c) making an adaptation of the Bounce Exchange Software (including  translating it, arranging it or undertaking other alteration of it) and copying the adaptation and/or making the adaptation available to the public in the same ways as described at (a) and (b) above, in Ireland.

104.     The Defendant has also violated and, unless enjoined, will continue to violate the CRRA 2000 § 376 (1), by (a) removing or altering rights management information from the Bounce Exchange Software, and/or (b) making available to the public copies of the Bounce Exchange Software, knowing that rights management information has been removed or altered from those copies, and/or (c) selling or, in the course of a business, trade or profession, having in Defendant's possession, custody or control, copies of the Bounce Exchange Software, knowing that rights management information has been removed or altered from those copies, knowing or having reason to believe that the primary purpose or effect of such removal or alteration is to induce, enable, facilitate or conceal an infringement of any right conferred by the CRRA 2000 in Ireland.

105.     Defendant has received substantial benefits in connection with these unauthorized and unlawful activities.

106.    All of the Defendant's acts are and were performed without the permission, license, or consent of Bounce Exchange.

107.    All of Defendant's acts of infringement were knowing, willful, and in complete disregard to the rights of Bounce Exchange.

108.    Said wrongful acts of Defendant have caused, and continue to cause, great injury to Bounce Exchange, which damage cannot be accurately computed, and unless this Court restrains Defendant from further commission of said acts, Bounce Exchange will suffer irreparable injury, for which it is without an adequate remedy at law.

109.    As a result of the acts of Defendant alleged herein, Bounce Exchange has suffered and is suffering substantial damage including, but not limited to, loss of profits, injury to goodwill and reputation, and the dilution of the value of its rights, all of which are not yet fully ascertainable.

110.    As a result of the acts of Defendant alleged herein, Bounce Exchange is entitled to an award of damages (including aggravated and/or exemplary damages) as the Court considers just, or to an account of Defendant's profits, in such amount to be proved at trial, pursuant to § 127 of the CRRA 2000.

111.    As a result of the acts of Defendant alleged herein, Bounce Exchange is entitled to an award of its attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**Copyright Infringement Under the Laws of Germany –**
**The German Copyright Act (Urhebergesetz)**

112.    Bounce Exchange hereby restates and realleges the allegations set forth in paragraphs 1 through 111 above and incorporates them herein by reference.

113.    The Bounce Exchange Software consists of material wholly original to Bounce Exchange, and is copyrighted subject matter protected under the laws of Germany

and its Copyright Act §§ § 2 (1), which protects computer programs as copyrightable literary works.

114.    Bounce Exchange is the exclusive copyright owner of the Bounce Exchange Software pursuant to Germany's Copyright Act.

115.    Germany is a signatory to and a member of the Berne Convention.

116.    Under the principle of national treatment, therefore, the copyright protection granted to the Bounce Exchange Software is the same as that which German law would grant to the creative works of a German author.

117.    As a consequence, the Bounce Exchange Software obtains national treatment without any formality such that the Bounce Exchange Software is afforded the full protection of German law from the moment it was created, without any need for registration in the Germany.

118.    Defendant has infringed and unless enjoined, will continue to infringe Bounce Exchange's German copyrights in the Bounce Exchange Software, in violation of the Copyright Act, § 15(1), (2) and (3), and § 69c (1) - (4), by copying it; issuing copies of it to the public; renting or lending it to the public; displaying it in public; communicating it to the public; adapting, loading, storing, running, or transmitting it; and reproducing, displaying, distributing and utilizing for purposes of trade unauthorized derivative versions of the Bounce Exchange Software and the copyrighted elements therein, in Germany.

119.    Defendant has received substantial benefits in connection with these unauthorized and unlawful activities.

120.    All of the Defendant's acts are and were performed without the permission, license, or consent of Bounce Exchange.

121.    All of Defendant's acts of infringement were knowing, willful, and in complete disregard to the rights of Bounce Exchange.

122.    Said wrongful acts of Defendant have caused, and continue to cause, great injury to Bounce Exchange, which damage cannot be accurately computed, and unless this Court restrains Defendant from further commission of said acts, Bounce Exchange will suffer irreparable injury, for which it is without an adequate remedy at law.

123.    As a result of the acts of Defendant alleged herein, Bounce Exchange has suffered and is suffering substantial damage including, but not limited to, loss of profits, injury to goodwill and reputation, and the dilution of the value of its rights, all of which are not yet fully ascertainable.

124.    As a result of the acts of Defendant alleged herein, Bounce Exchange is entitled to its damages or to Defendant's profits, each in amounts to be proved at trial, pursuant to § 97 (2).

## NINTH CAUSE OF ACTION
### Copyright Infringement Under the Law of Australia –
### Copyright Act 1968 (Cth)

125.    Bounce Exchange hereby restates and realleges the allegations set forth in paragraphs 1 through 124 above and incorporates them herein by reference.

126.    The Bounce Exchange Software consists of material wholly original to Bounce Exchange, and is copyrighted subject matter protected under the laws of Australia and its Copyright Act 1968 (Cth), §§ 31 and 32.

127.    Bounce Exchange is the exclusive copyright owner of the Bounce Exchange Software pursuant to § 35(6) of the Copyright Act 1968 (Cth).

128.    Australia is a signatory to and a member of the Berne Convention.

129.    Under the principle of national treatment, therefore, the copyright protection granted to the Bounce Exchange Software is the same as that which Australia law would grant to the creative works of an Australian author.

130.    As a consequence, the Bounce Exchange Software obtains national treatment without any formality such that the Bounce Exchange Software is afforded the full protection of Australia law from the moment it was created, without any need for registration in Australia. § 184 of the Copyright Act 1968 (Cth), and Copyright (International Protection) Regulations (Cth) 1969 regulation.

131.    Defendant has infringed and unless enjoined, will continue to infringe Bounce Exchange's Australian copyrights in the Bounce Exchange Software, in violation of §§ 36 and 38 of the Copyright Act 1968 (Cth), by reproducing it in a material form, publishing it, communicating it to the public,  entering into a commercial rental arrangement in respect of it, selling it, letting it for hire, by way of trade offering or exposing it for sale or hire, or by way of trade exhibiting it in public, when the Defendant knew, or ought to have known, that the making of it constituted an infringement of Bounce Exchange's Australian copyright, or authorizing the doing of any of these things, each of the foregoing without the licence or authority of Bounce Exchange, in Australia.

132.    Defendant has received substantial benefits in connection with these unauthorized and unlawful activities.

133.    All of the Defendant's acts are and were performed without the permission, license, or consent of Bounce Exchange.

134.    All of Defendant's acts of infringement were knowing, willful, and in complete disregard to the rights of Bounce Exchange.

135.     Said wrongful acts of Defendant have caused, and continue to cause, great injury to Bounce Exchange, which damage cannot be accurately computed, and unless this Court restrains Defendant from further commission of said acts, Bounce Exchange will suffer irreparable injury, for which it is without an adequate remedy at law.

136.    As a result of the acts of Defendant alleged herein, Bounce Exchange has suffered and is suffering substantial damage including, but not limited to, loss of profits, injury to goodwill and reputation, and the dilution of the value of his rights, all of which are not yet fully ascertainable.

137.    As a result of the acts of Defendant alleged herein, Bounce Exchange is entitled to, at its election, either its damages or an account of the Defendant's profits, in amounts to be proved at trial, pursuant to § 115(2) of the Copyright Act 1968 (Cth).

138.    As a result of the acts of Defendant alleged herein, Bounce Exchange is entitled to an award of additional damages pursuant to § 115(4) of the Copyright Act 1968 (Cth).

139.    As a result of the acts of Defendant alleged herein, Bounce Exchange is entitled to an award of its attorneys' fees and costs pursuant to the laws and procedures of Australia.

## PRAYER FOR RELIEF

Wherefore, Bounce Exchange requests the following relief:

1.    For permanent injunctive relief enjoining Defendant and all of its officers, agents, servants, representatives, employees, attorneys, parent and subsidiary corporations, affiliates, assigns and successors in interest, and all other persons acting in concert with them, from infringing Bounce Exchange's copyrights in the Bounce Exchange Software, and from violating Bounce Exchange's copyright management information rights, including by copying, displaying, advertising, offering, selling, loading, running, adapting, operating, reproducing, distributing, and communicating and making available to the public, and authorizing any of the aforementioned acts, Defendant's Software and any further infringing versions thereof.

2.    For an Order directing Defendant to:

a.      Destroy all copies of Defendant's Software in Defendant's possession, custody, or control, at Defendant's costs, and to certify to the Court that it has destroyed all infringing software in Defendant's possession, custody, or control, including software Defendant has provided to third parties; and

b.      Recall all copies of Defendant's Software distributed to third parties and to permanently remove all copies of Defendant's Software from any distribution channels at Defendant's costs, and to certify to the Court that it has done so.

3.      For an Order awarding Bounce Exchange its damages and Defendant's profits under the copyright laws of the United States, the UK, Ireland, Germany and Australia, in an amount to be ascertained at trial, plus interest.

4.      For an Order awarding Bounce Exchange its damages and Defendant's profits or, in the alternative, statutory damages for each of Defendant's violations of the Digital Millennium Copyright Act.

5.      For an Order granting recovery of Bounce Exchange's attorneys' fees and costs associated with this action.

6.      For an Order granting pre-judgment interest at the legally allowable rate on all amounts owed.

7.      For an Order directing Defendant to, at its own expense, disseminate and publish the judgment of this action.

8.      For such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38, Bounce Exchange hereby demands a

trial by jury of all issues triable of right by a jury.


Dated:  December 4, 2015                     Respectfully submitted,

                                             FISH & RICHARDSON P.C.


                             By: _____

Michael F. Autuoro (MA2932)          Kristen McCallion (KM5593)
FISH & RICHARDSON P.C.               FISH & RICHARDSON P.C.
601 Lexington Avenue, 52nd Floor     601 Lexington Avenue, 52nd Floor
New York, NY 10022                   New York, NY 10022
Telephone: (212) 641-2237            Telephone: (212) 765-5070
Facsimile:  (212) 258-2291           Facsimile:  (212) 258-2291
Email:    autuoro@fr.com             Email: mccallion@fr.com


                                     *Attorneys for Plaintiff*
                                     BOUNCE EXCHANGE, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of December, 2015, a true and correct copy of the

foregoing **Second Amended Complaint** was filed via electronic filing with the Clerk of the

Court using the CM/ECF system and a copy hereof will be served upon all counsel of record

via the Court's CM/ECF system.




Lisa Ng