```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
                                         :      15cv3268 (DLC)
BOUNCE EXCHANGE, INC.,                   :
                                         :      OPINION & ORDER
                    Plaintiff,           :
                                         :
          -v-                            :
                                         :
ZEUS ENTERPRISE LTD. d/b/a/ YIELDIFY,    :
                                         :
                    Defendant.           :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff Bounce Exchange, Inc.:

Kristen McCallion
Michael F. Autuoro
FISH & RICHARDSON P.C.
601 Lexington Ave., 52nd Floor
New York, NY 10022

For defendant Zeus Enterprise Ltd. d/b/a Yieldify:

Edward J. DeFranco
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10001

DENISE COTE, District Judge:

     Bounce Exchange, Inc. ("Bounce") develops and sells software.  It brings this suit against Zeus Enterprise Ltd. -- which does business as "Yieldify" -- alleging infringement of its copyright in certain software related to online advertising.  Bounce now seeks to amend its complaint to add two claims under the Digital Millennium Copyright Act ("DMCA").  The DMCA claims

rest upon Bounce's contention that certain abbreviations of its corporate name used throughout its software's source code constitute "copyright management information" ("CMI") as defined by 17 U.S.C. § 1202(c).  This Opinion concludes that incorporating the name of the source code's author or its copyright holder into the source code itself qualifies as an "identification" of the author or copyright holder for purposes of § 1202(c).  For these reasons, Bounce's motion to amend with respect to the two DMCA claims is granted.

## BACKGROUND

The following facts are taken from the proposed second amended complaint.  Bounce makes and sells proprietary software that permits its clients to track website users' behavior and to target those users with relevant advertising.  Bounce is the exclusive owner of copyright in this software, including the underlying source code.  Bounce alleges that in March 2013, two executives of the United Kingdom-based software company Yieldify posed as a potential customer and requested a demonstration of Bounce's software.  Bounce states that, because of this, it provided a software demonstration, non-public information, and marketing materials to Yieldify's Chief Executive Officer and Chief Technology Officer.

Bounce states that in February 2015 it discovered that

Yieldify was selling software source code that was "substantially similar" to Bounce's proprietary code, including software that directly reproduces "portions of the code, structure, sequence, and organization" of Bounce's software. Bounce alleges that Yieldify improperly removed "all references to and identifications of Bounce Exchange" from the software's source code.  The references and identifications in question are integrated into the text of the Bounce code.  For example, one portion of the code reads as follows:

```
bouncex.events = 'mousemove.bouncex keydown.bouncex
DOMMouseScroll.bouncex mousewheel.bouncex
mousedown.bouncex touchstart.bouncex
touchmove.bouncex';

bouncex.body.bind(bouncex.events,function()[.]
```

Yieldify replaced the terms "bounce" and "bouncex" with terms referring to Yieldify.  For example, the portion of Yieldify's source code corresponding to the above code reads

```
yiel.events = "mousemove.yieldifyx keydown.yieldifyx
DOMMouseScroll.yieldifyx mousewheel.yieldifyx
mousedown.yieldifyx touchstart.yieldifyx touchmove.
Yieldifyx";

yiel.body.bind(yiel.events,function()[.]
```

Bounce sent Yieldify a letter on March 11 alleging copyright infringement and demanding that Yieldify cease its allegedly infringing activities.  In a response of March 23, Yieldify denied that it was infringing Bounce's copyright and

asserted that the software Bounce cited as infringing was instead based on open-source software.

Bounce brought suit against Yieldify on April 24, alleging one count of copyright infringement pursuant to 17 U.S.C. § 501. On June 16, Bounce filed its first amended complaint. That amendment altered the description of the defendant but did not add any other claims. Bounce moved to amend its complaint a second time on October 29; that amendment includes eight additional causes of action. The motion was fully submitted on November 20. On December 3, the Court partially granted the motion on certain conditions related to the scope and timing of discovery. Bounce Exch., Inc. v. Zeus Enter. Ltd. d/b/a/ Yieldify, No. 15cv3268 (DLC), 2015 WL 7871043, at *3 (S.D.N.Y. Dec. 3, 2015). That Opinion and Order reserved the issue of futility with respect to the two DMCA claims. That remaining issue is resolved below.

## DISCUSSION

Bounce seeks to amend its complaint to add claims of wrongful alteration and distribution of copyrighted material pursuant to the DMCA, 17 U.S.C. § 1202. Yieldify opposes that amendment on the ground of futility.

"A court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); accord Grullon v. City

of New Haven, 720 F.3d 133, 139 (2d Cir. 2013).  Nevertheless, it remains "within the sound discretion of the court whether to grant leave to amend."  John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994).  "Reasons for a proper denial of leave to amend include . . . futility of [the] amendment . . . ."  AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010) (citation omitted).

"[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss."  IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015) (citation omitted).  To survive a Rule 12(b)(6) motion to dismiss, in turn, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Yieldify argues that amending the complaint to add these causes of action would be futile because the terms Bounce incorporated into its source code -- "bounce" and "bouncex" -- do not satisfy the statutory definition of CMI.  Yieldify is wrong.

"The DMCA was enacted in 1998 to implement the World

Intellectual Property Organization Copyright Treaty, and to update domestic copyright law for the digital age." Viacom Int'l, Inc. v. YouTube, Inc., 676 F.3d 19, 26 (2d Cir. 2012) (citation omitted).  The DMCA was passed because Congress recognized that "the ease with which pirates could copy and distribute a copyrightable work in digital form was overwhelming the capacity of conventional copyright enforcement to find and enjoin unlawfully copied material." Universal City Studios, Inc. v. Corley, 273 F.3d 429, 435 (2d Cir. 2001).  With the DMCA, "Congress sought to combat copyright piracy in its earlier stages, before the work was even copied." Id.

"The DMCA prohibits, among other things, 'intentionally remov[ing] or alter[ing] any copyright management information,' such as the familiar © copyright notice." Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 107 (2d Cir. 2014) (quoting 17 U.S.C. § 1202).  Section 1202 provides, in pertinent part, that "[n]o person shall . . . intentionally remove or alter any copyright management information" and that "[n]o person shall . . . provide copyright management information that is false." Id. § 1202(a), (b).  CMI is broadly defined as eight categories of "information conveyed in connection with copies or phonorecords of a work or performances or displays of a work." 17 U.S.C. § 1202(c).  These categories include "[t]he title and

other information identifying the work," "[t]he name of, and other identifying information about, the author of a work," and "[t]he name of, and other identifying information about, the copyright owner of the work."  Id.

Bounce asserts that the terms "bounce" and "bouncex" that appear in its source code are CMI.  The terms are a shorthand form of the official name of the author of the work, and they are inserted into the code itself.  Section 1202(c) defines CMI as information "conveyed in connection with" a copyrighted work.  (Emphasis added).  "In connection with," by plain reading and common sense, comprehends information conveyed in or with a copyrighted work if that information otherwise satisfies § 1202(c)'s criteria.  For example, the name of a book's author appears typically on both the cover and several pages inside the book.  Similarly, a painting may bear the painter's signature on its canvas.  Indeed, many courts have recognized that forms of CMI may be contained in the body of a work.[1]  Accordingly, Bounce's use of its name within the code conveys the identifying information in connection with the works for which the plaintiff

---

[1] See, e.g., Williams v. Cavalli, No. CV 14-06659-AB JEMX, 2015 WL 1247065, at *2-3 (C.D. Cal. Feb. 12, 2015) (artists' signatures displayed in mural were CMI); Fischer v. Forrest, No. 14cv1304 (PAE), 2015 WL 195822, at *8 (S.D.N.Y. Jan. 13, 2015) (inclusion of the creator's surname in product name published on website and in catalogue within copyright-protected text).

seeks copyright protection.

This conclusion is reinforced when one considers the nature of the copyrighted work at issue here. Software code may be entitled to copyright protection if it is sufficiently original. See Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 963-64 (2d Cir. 1997). But, source code is distinctive in that -- unlike the software it usually supports -- it is seldom seen by anyone but software developers. Weaving CMI into the text of the source code may be among the most efficient or security-enhancing ways to include CMI with that code. Accordingly, the terms "bounce" and "bouncex" are CMI as defined in § 1202(c).

Yieldify makes three arguments against interpreting the statute in this manner. None succeeds. Yieldify first argues that what Bounce claims to be CMI is embedded in the source code to such an extent that it has become a "portion of the work." Yieldify contends that the DMCA demands a clear demarcation between a copyrighted work and any CMI associated with it, and thus if the purported CMI is a "portion of the work" it cannot be CMI as a matter of law. For the reasons described above, this is wrong.

Yieldify misconstrues the term "in connection with" to exclude any information that is a "portion" or element of the

copyrighted work. Yieldify finds support in several of the examples of CMI supplied by § 1202(c) -- "title and other information <u>identifying</u> the work," "author <u>of a</u> work," and "terms and conditions <u>for use of</u> the work" (the emphasis is Yieldify's) -- but it reads too much into those phrases. A title, author's name, and even terms and conditions may easily be displayed as a "portion of" a work "subject to its copyright."

Yieldify next argues that the statutory definition of CMI should be subject to a "narrowing interpretation" limiting CMI to information that is "assigned" to the work "by automated systems." Because the terms in question are not assigned in that manner, Yieldify argues, they cannot be CMI. This argument may swiftly be dismissed. "When a statute's language is clear," a court's "only role is to enforce that language according to its terms." <u>Life Receivables Trust v. Syndicate 102 at Lloyd's of London</u>, 549 F.3d 210, 216 (2d Cir. 2008) (citation omitted). Yieldify's argument for a narrow reading of CMI is impossible to square with the broad language of § 1202(c), which speaks of "information conveyed in connection with copies of a work." Therefore, "a cause of action under § 1202 of the DMCA potentially lies whenever the types of information listed in § 1202(c)[] and 'conveyed in connection with copies of a work

including in digital form' [are] falsified or removed, <u>regardless of the form in which that information is conveyed</u>." <u>Murphy v. Millennium Radio Grp.</u>, 650 F.3d 295, 305 (3d Cir. 2011) (emphasis added) (quoting 17 U.S.C. §1202(c)).[2]

Yieldify's third argument also fails to persuade.  Yieldify argues that the terms "bounce" and "bouncex," as used in Bounce's source code, are "not specific enough" to identify Bounce as the code's author.  Merely because these terms <u>could</u> be construed to refer to a different entity called "Bounce" or some permutation thereof, however, does not mean that the terms <u>cannot</u> qualify as CMI as a matter of law.  Section 1202(c) states that CMI may consist of "[t]he name of . . . the author of a work"; it does not forbid using abbreviations or short-form versions of the author's name.  The terms "bounce" and "bouncex" are sufficiently linked to the plaintiff's full corporate name to constitute CMI.  Accordingly, Yieldify's argument that Bounce's DMCA claims are futile must fail.

## CONCLUSION

The balance of Bounce's motion to amend is granted.  Bounce may add the two DMCA claims to its complaint.  As explained in

---

[2] The out-of-circuit authority upon which Yieldify principally relies, <u>IQ Group, Ltd. v. Wiesner Pub., LLC</u>, 409 F. Supp. 2d 587, 598 (D.N.J. 2006), has been abrogated by the Third Circuit, <u>see</u> <u>Murphy</u>, 650 F.3d at 305.

the December 3 Opinion and Order, however, to the extent Bounce intends to seek discovery on these claims, it must show why any discovery beyond that already taken under the terms of the July 20 Scheduling Order and the December 3 Opinion and Order is necessary, and must diligently pursue any such discovery.

Dated:    New York, New York
          December 9, 2015

                                    _____
                                            DENISE COTE
                                    United States District Judge